**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**NATHANIEL A. RICHARDSON, JR.,**

    **Petitioner,**

**v.**

                  **CRIMINAL ACTION NO. 2:96-cr-153(01)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

This matter is before the Court on remand of Petitioner Nathaniel A. Richardson, Jr.'s

("Petitioner") appeal from the United States Court of Appeals for the Fourth Circuit ("Fourth

Circuit"). *United States v. Richardson*, 852 Fed. App'x 106 (4th Cir. 2021).[1] For the reasons stated

herein, Petitioner's Motion for Reconsideration of the Court's Order of July 11, 2019, is **DENIED**

**IN PART AND GRANTED IN PART**.

### I.   FACTUAL AND PROCEDURAL HISTORY

On July 25, 1996, Petitioner was named alongside six co-defendants in a sixteen-count

Indictment, which charged him with six counts. Indictment, ECF No. 1; *see also* Presentence

---

[1] On appeal, the Fourth Circuit vacated this Court's November 12, 2019, Memorandum Opinion and Order, which denied Petitioner's Motion for Reconsideration of the Court's July 11, 2019, Memorandum Opinion and Order. *See Richardson*, 852 Fed. App'x at 107 ("For the reasons that follow, we vacate the district court's order and remand for further proceedings."). This Court's July 11, 2019, and November 12, 2019, Orders denied two motions Petitioner had filed: (1) Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2); and (2) Motion to Reduce Sentence Pursuant to the FIRST STEP Act. Mem. Op. & Order Deny'g Pet'r's *Pro Se* Mot. Reduce Sentence 18 U.S.C. § 3582(c)(2) & Deny'g Pet'r's *Pro Se* Mot. Reduce Sentence FIRST STEP Act, ECF No. 434 ("July 11, 2019, Order"); Mem. Op. & Order Deny'g Pet'r's Mot. Reconsid. Court's Order July 11, 2019, ECF No. 440 ("Nov. 12, 2019, Order"). In its opinion, however, the Fourth Circuit limited its discussion to this Court's denial of Petitioner's Motion to Reduce Sentence Pursuant to the FIRST STEP Act. *See Richardson*, 852 Fed. App'x at 108 ("We therefore vacate the district court's denial of First Step Act relief and remand for further proceedings in light of *Collington*."). The Fourth Circuit did not analyze nor express any opinion as to this Court's findings on Petitioner's Motion under 18 U.S.C. § 3582(c)(2). Because the Fourth Circuit vacated the Court's November 12, 2019, Order in its entirety, and for the sake of completeness, the Court nonetheless reconsiders Petitioner's Motion under 18 U.S.C. § 3582(c)(2) as well.

Invest. Report ¶ 1, ECF No. 399 ("PSR"). Count One charged Petitioner with Conspiracy to Distribute Cocaine Base and Heroin, in violation of 21 U.S.C. § 846. Indictment at 1-11. Count Two charged Petitioner with Continuing Criminal Enterprise, in violation of 21 U.S.C. §§ 848(a) and (c). *Id.* at 12. Count Three charged Petitioner with Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 13. Count Ten charged Petitioner with Use of a Firearm in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). *Id.* at 1, 18. Counts Fifteen and Sixteen charged Petitioner with Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). *Id.* at 22-23.

On October 17, 1996, Petitioner and some of his co-defendants went to trial. On October 28, 1996, the jury found Petitioner guilty of Counts One, Two, Three, Fifteen, and Sixteen. Jury Verdict, ECF No. 122. The jury found Petitioner not guilty of Count Ten. *Id.* In his Presentence Investigation Report ("PSR"), Petitioner was assessed a mandatory United States Sentencing Guidelines (U.S.S.G.) range of life imprisonment. PSR at ¶ 150. On January 24, 1997, the Court held a sentencing hearing, during which it vacated Petitioner's conviction on Count One because it found that Count One was a lesser included offense of Count Two. J., ECF No. 144. The Court sentenced Petitioner to life imprisonment, consisting of life imprisonment on Count Two, life imprisonment on Count Three, two-hundred-forty (240) months' imprisonment on Count Fifteen, and two-hundred-forty (240) months' imprisonment on Count Sixteen, all to run concurrently with Count Two. *Id.* Since sentencing, Petitioner has filed numerous motions for postconviction relief, all of which have been denied. *See* Order Deny'g Pet'r's Mot. Vacate, ECF No. 267; Order Deny'g Pet'r's Mot. Alter or Amend J., ECF No. 281; Order Deny'g Pet'r's Mot. Modif. Sentence, ECF No. 310; Mem. Order Deny'g Pet'r's Second Mot. Vacate, ECF No. 343; Mem. Order Deny'g Pet'r's Mot. Relief J. 60(b), ECF No. 393; Mem. Op. & Order Deny'g Pet'r's Second Mot. Relief

J. R. 60(b), ECF No. 415.

On January 17, 2019, Petitioner filed a *pro se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2). Pet'r's *Pro Se* Mot. Reduce Sentence 18 U.S.C. § 3582(c)(2), ECF No. 417 ("Pet'r's Mot. § 3582(c)(2)"). The same day, Petitioner filed another *pro se* Motion to Reduce Sentence under Section 404 of the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("FIRST STEP Act"). Pet'r's *Pro Se* Mot. Reduce Sentence FIRST STEP Act, ECF No. 418 ("Pet'r's Mot. FIRST STEP Act"). Petitioner responded through counsel, the Government responded in opposition, and Petitioner replied. Pet'r's Mem. Supp. *Pro Se* Mot. Reduce Sentence FIRST STEP Act, ECF No. 429 ("Pet'r's Mem. Supp."); Gov't's Mem. Opp'n to Pet'r's *Pro Se* Mot. Reduce Sentence FIRST STEP Act, ECF No. 431; Pet'r's Reply to Gov't's Mem. Opp'n to Pet'r's *Pro Se* Mot. Reduce Sentence FIRST STEP Act, ECF No. 433. On July 11, 2019, the Court denied both Motions. Mem. Op. & Order Deny'g Pet'r's *Pro Se* Mot. Reduce Sentence 18 U.S.C. § 3582(c)(2) & Deny'g Pet'r's *Pro Se* Mot. Reduce Sentence FIRST STEP Act, ECF No. 434 ("July 11, 2019, Order"). On August 26, 2019, Petitioner filed a Motion for Reconsideration of the Court's Order of July 11, 2019. Pet'r's Mot. Reconsid. Court's Order July 11, 2019, ECF No. 437 ("Pet'r's Mot. Reconsid."). On November 12, 2019, the Court denied Petitioner's Motion for Reconsideration. Mem. Op. & Order Deny'g Pet'r's Mot. Reconsid. Court's Order July 11, 2019, ECF No. 440 ("Nov. 12, 2019, Order").

On November 26, 2019, Petitioner appealed. Notice Appeal, ECF No. 441. On July 8, 2021, the Fourth Circuit vacated and remanded this Court's November 12, 2019, Order. *Richardson*, 852 F. App'x at 108. Specifically, the Fourth Circuit vacated this Court's "denial of First Step Act relief and remand[ed] for further proceedings" in light of *United States v. Collington*,

3

995 F.3d 347 (4th Cir. 2021), which it decided after this Court issued both Orders relevant to the instant matter. *Id.* Accordingly, the Court considers Petitioner's Motion for Reconsideration of the Court's Order of July 11, 2019, on remand.

## II.   LEGAL STANDARD

### A. 18 U.S.C. § 3582(c)(2)

When a court imposes a sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C. § 3582(b). It is well established that "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (citing *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)). A "court may not modify a term of imprisonment once it has been imposed" except in limited circumstances, including "to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

Pursuant to 18 U.S.C. § 3582(c)(2), a court may reduce a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." A sentence reduction under this provision requires a two-step analysis. *Dillon v. United States*, 560 U.S. 817, 826 (2010). First, the court must determine whether a reduction is consistent with §1B1.10 of the United States Sentencing Guidelines (U.S.S.G.). *Id.* Next, the court considers "whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in in § 3553(a)." *Id.* An analysis under § 3582(c)(2) is not governed by *United States v. Booker*, 543 U.S. 220 (2005), meaning the court is not required to treat §1B1.10(b) as advisory. *Id.* at 819; *see also* U.S.S.G. §1B1.10 cmt. background ("The Supreme Court has concluded that proceedings under section

4

3582(c)(2) are not governed by *United States v. Booker*, 543 U.S. 220 (2005), and this policy statement remains binding on courts in such proceedings." (citing *Dillon*, 560 U.S. 817)).

## B.  § 404(b) of the FIRST STEP Act

Before 2010, federal drug statutes "imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine." *Dorsey v. United States*, 567 U.S. 260, 263 (2012). The 100-to-1 crack-to-powder cocaine mandatory minimum disparity inflicted disproportionate and unjust effects on Black offenders. *See Kimbrough v. United States*, 552 U.S. 85, 98 (2007). Congress eventually passed the Fair Sentencing Act of 2010, which reduced the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat 2372 (2010) ("Fair Sentencing Act" or "FSA"). Specifically, Section 2 of the FSA raised the quantity of crack cocaine required to trigger a 10-year mandatory minimum from 50 grams to 280 grams, and raised the quantity required to trigger a 5-year mandatory minimum from 5 grams to 28 grams. *Id.* Section 3 eliminated mandatory minimum sentences for simple possession convictions. *Id.* The FIRST STEP Act of 2018, in part, made these sections retroactive, thereby allowing incarcerated individuals sentenced before the passage of the FSA to petition the sentencing court "to bring [their] pre-2010 sentences 'in line' with post-2010 sentences." *Chambers*, 956 F.3d at 670 (quoting Fact Sheet, Senate Comm. on the Judiciary, The First Step Act of 2018 (S.3649) – as Introduced (Nov. 15, 2018)); *see also* FIRST STEP Act at § 404, 132 Stat. at 52222.

The Fourth Circuit has held that motions under the FIRST STEP Act "fall under § 3582(c)(1)(B)," constituting "a distinct exception to [the] finality" of criminal sentences. *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). When evaluating such a motion, the court undertakes two overarching inquiries: first, the court must determine whether the sentence is

eligible for review; and, if so, the court must conduct a complete review on the merits. *See United States v. Lancaster*, 997 F.3d 171, 174 (4th Cir. 2021).

### 1. Sentence Eligibility Determination

"[A] district court presented with a First Step Act motion to reduce a sentence must first determine whether the sentence qualifies for reduction – i.e., whether it is 'eligible' for consideration 'on the merits.'" *Lancaster*, 997 F.3d at 174 (quoting *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020)). A sentence is eligible for review if it meets three explicit criteria set forth in the FIRST STEP Act. *Id.* First, the sentence sought to be reduced must be for a "covered offense," meaning "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." FIRST STEP Act at § 404(a), 132 Stat. at 5222. Second, the motion for reduction must be addressed to the court that imposed the relevant sentence. *See id.* at § 404(b), 132 Stat. at 5222; *see also Lancaster*, 997 F.3d at 174. Third, the sentence must not have been "previously imposed or previously reduced" pursuant to the FSA, and the petitioner must not have previously filed a motion under § 404 that was "denied after a complete review of the motion on the merits." *Id.* at § 404(c), 132 Stat. at 5222.

### 2. Complete Review on the Merits

If a sentence qualifies for review on the merits, a district court then has discretion to decide whether to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id.* at § 404(b), 132 Stat. at 5222 (internal citation omitted). The district court's discretion to grant such relief is broad. *See id.* at § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Albeit broad, the Fourth Circuit has mandated

several steps district courts must take to ensure that the evaluation of the merits is "procedurally and substantively reasonable." *Collington*, 995 F.3d at 358.

First, in retroactively applying the FSA, the court must determine the new statutory range set by any amended statutory minimums and maximums. *See id.* at 357 ("[T]he district court's overall sentencing authority is constrained by the retroactively applicable statutory maximums [and minimums] . . . such that the district court abuse[s] its discretion in letting stand a sentence that was made illegal under the Fair Sentencing Act."); *see also Welch v. United States*, 578 U.S. 120, 134 (2016) ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute."). Second, a district court must recalculate the Sentencing Guidelines range by correcting original Guidelines errors and applying intervening case law made retroactive to the original sentence. *Chambers*, 956 F.3d at 670; *Collington*, 995 F.3d at 355. Third and finally, the court must reconsider the 18 U.S.C. § 3553(a) factors. *Collington*, 995 F.3d at 355. In so doing, courts are able "to more comprehensively shape sentencing decisions and even *depart downward* from the new Guidelines range." *Id.* (emphasis in original). Indeed, in accordance with 18 U.S.C. § 3661, courts may also consider post-sentencing conduct. *Chambers*, 956 at 674-75 ("There are generally no limitations on the types of character and background information a court may consider for sentencing purposes."); *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) ("A categorical bar on the consideration of postsentencing rehabilitation evidence would directly contravene Congress' expressed intent in § 3661.").

"Ultimately, the First Step Act contemplates a robust resentencing analysis, albeit not a plenary resentencing hearing." *Collington*, 995 F.3d at 358. "Rather, the scope of the analysis is defined by the gaps left from the original sentencing to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening

circumstances." *Lancaster*, 997 F.3d at 175. Thus, if "the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated." *Id.*

## III.   DISCUSSION

### A.  Relief Under 18 U.S.C. § 3582(c)(2)

Following the two-step approach under 18 U.S.C. § 3582(c)(2) "does not impose a new sentence in the usual sense." *Dillon*, 560 U.S. at 827. Rather, "[a]t step one, § 3582(c)(2) requires the court to follow the Commission's instructions in §1B1.10." *Id.* Section 1B1.10(b)(1) governs how a court must determine whether, and to what extent, a reduction in a defendant's term of imprisonment is warranted. U.S.S.G. §1B1.10(b)(1) (2021).[2] Specifically, a court must "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced." U.S.S.G. §1B1.10(b)(1).

Here, the Court must determine Petitioner's amended Guidelines range as if U.S.S.G. Amendment 782 had been in effect when Petitioner was sentenced on January 24, 1997. The Court therefore calculates Petitioner's amended Guidelines range according to the 1995 Guidelines Manual, imputing Amendment 782.[3] *See* U.S.S.G. §1B1.10 cmt. n. 2 ("In determining the amended guideline range under subsection (b)(1), the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected.").

---

[2] *See* U.S.S.G. §1B1.10 cmt. n. 8 ("Consistent with subsection (a) of §1B1.11 (Use of Guidelines Manual in Effect on Date of Sentencing), the court shall use the version of this policy statement that is in effect on the date on which the court reduces the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).").

[3] Petitioner originally sought relief pursuant to 18 U.S.C. § 3582(c)(2) through the retroactive application of U.S.S.G. Amendments 591, 782, and 790. Pet'r's Mot. § 3582(c)(2) at 1. In his Motion for Reconsideration, however, Petitioner only asks the Court to reconsider his eligibility for relief under Amendment 782. Pet'r's Mot. Reconsid. at 2-4; *see also* Brief for Defendant-Appellant, *United States v. Richardson*, 852 Fed. App'x 106 (4th Cir. 2021) (No. 19-7766) 2020 WL 1983539, at *7-10 (only challenging the Court's ruling regarding his eligibility for relief under Amendment 782 on appeal). The Court thus limits its analysis to Amendment 782.

First, the Court finds that Amendment 782 applies to Petitioner's sentence because his Guidelines range was calculated under U.S.S.G. §2D1.1, which Amendment 782 modified. *Dillon*, 560 U.S. at 826. U.S.S.G. §1B1.10(e)(1) states that a "court shall not order a reduced term of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015, or later." The Court finds that it erred in its previous Order when it stated the following:

> "Amendment 782 reduces the base offense levels of drug offenses under U.S.S.G. § 2D1.1(c). The Sentencing Commission notes which of its amendments are retroactive and grounds for claims under § 3582(c)(2) in U.S.S.G. 1B1.10(d). While Amendment 782 is on that list, it is specifically limited to sentences that were imposed on November 1, 2015 or later. U.S.S.G. § 1B1.10(e). As Petitioner was sentenced on February 3, 1997, he has no claim under this Amendment."

July 11, 2019, Order at 4. The Court therefore concludes that an order imposed in this matter— with an effective date of November 1, 2015, or later—would allow Amendment 782 to have a retroactive effect on Petitioner's sentence reduction. Specifically, Amendment 782's retroactive effect refers to the effective date of the Court's new, potential order for a sentence reduction and not the date of the Court's original sentencing order. U.S.S.G. §1B1.10 cmt. n. 6 ("Amendment 782 . . . is covered by this policy statement only in cases in which the order reducing the defendant's term of imprisonment has an effective date of November 1, 2015, or later."). The Court finds, however, that even if Amendment 782 had been in effect at the time Petitioner was sentenced, his amended Guidelines ranges would not change. U.S.S.G. §1B1.10(b)(1).

For Count Three, Petitioner was attributed with 26.01 kilograms[4] of cocaine base, which, at the time, gave him a base offense level of 38. PSR at 43; *see also* U.S.S.G. §2D1.1(c)(1) (1995)

---

[4] Petitioner argues he should only be attributed with 1.5 kilograms because "[t]he drug quantity attributed to [him] at sentencing was objected to and litigated," but "no specific finding was made at the sentencing hearing regarding the total drug quantity attributed to [him]." Pet'r's Mot. Reconsid. at 3. While the Court may not have made a specific finding at the sentencing hearing itself, the PSR establishes that Petitioner was originally attributed with 26.13 kilograms of cocaine base and, after extensive objection and litigation during the sentencing hearing, ultimately

(Level 38 for 1.5 KG or more of Cocaine Base). Applying Amendment 782, retroactively, Petitioner would still have a base offense level of 38. *See* U.S.S.G. §2D1.1(c)(4) (2014) ("25.2 KG or more of Cocaine Base.").[5] With a two-level enhancement for possessing a dangerous weapon under U.S.S.G. §2D1.1(b)(1), a four-level enhancement for role in the offense under U.S.S.G. §3B1.1(a), and a two-level enhancement for reckless endangerment under U.S.S.G. §3C1.2, Petitioner's amended offense level remains 46. *See* PSR at 43. Since Petitioner's Criminal History Category remains V, his amended Guidelines range for Count Three remains life imprisonment.

For Count Two, Petitioner's underlying offense level was and would remain 40 because the application of U.S.S.G. §2D1.1 does not change, meaning Petitioner's base offense level for Count Two would remain 44. *See* PSR at 43-44 (underlying offense level based on Petitioner's base offense level of 38 and two-level enhancement for possessing dangerous weapon, all under §2D1.1); *see also* U.S.S.G. §2D1.5(a) (Guideline for Count Two) (for base offense level, apply the greater of: 4 plus the offense level from §2D1.1 applicable to the underlying offense; or 38). With a two-level enhancement for reckless endangerment under U.S.S.G. §3C1.2, Petitioner's total offense level for Count Two remains 46. *See* PSR at 44; *see also* U.S.S.G. §2D1.5 cmt. n. 1 ("Do not apply any adjustment from Chapter Three, Part B (Role in the Offense)."). Thus, with a

---

attributed with 26.01 kilograms. *Compare* PSR at ¶ 72 ("Richardson is attributed with 26.13 kilograms of cocaine base."), *with* PSR at 40 ("The Court found that it would be double-counting to attribute Richardson with this quantity [1/8 kilogram of crack cocaine, referenced in paragraph 33]. Richardson's total drug quantity was reduced by 125 grams of crack cocaine. The worksheet was amended accordingly."), *and* PSR at 43 (Worksheet A corrected from a total of 26.13 to 26.01 kilograms of cocaine base). Indeed, at sentencing, Petitioner objected to, and the Court made specific findings on, several separate drug quantities attributed to him. *Compare* PSR at 36-39 (Unresolved Objections By the Defendant), *with* PSR at 40-42 (Findings of Fact); *see also* Sent'g Hr'g Tr. 16:19-21:19, 27:02-33:09, 38:09-41:23, 44:10-51:11, 52:12-59:01, 75:11-93:25 (testimony of Agent White), 94:03-98:17 (Court's findings), ECF No. 177. A review of the PSR, after accounting for the Court's findings at sentencing, reveals that Petitioner is attributed with 26.00237 kilograms of cocaine base, precisely, not including the quantity of heroin converted for sentencing. *See* PSR at ¶¶ 22-25, 27-31, 35, 38, 42-45, 47, 51, 53, 62. The Court therefore finds that Petitioner is incorrect in arguing that "the record does not establish that [he] was explicitly held responsible for 26 kilograms of cocaine base, or any other quantity other than more than 1.5 kilograms of cocaine base." Pet'r's Mot. Reconsid. at 3.

[5] Since Amendment 782 became effective on November 1, 2014, the Court relies on the 2014 Guidelines Manual for the sake of accuracy and precision. *See* U.S. SENT'G GUIDELINES MANUAL §2D1.1 historical n. (U.S. SENT'G COMM'N 2014). The Court notes, however, that the most recent version of the Guidelines reflects the same designation.

Criminal History Category of V, Petitioner's amended Guidelines range remains life.

The Court ultimately finds that Petitioner is not entitled to relief under 18 U.S.C. § 3582(c)(2) because his "term of imprisonment [is] based on a sentencing range that has [not] subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Under U.S.S.G. §2D1.1, both before and after Amendment 782, Petitioner has a base offense level of 38 for Count Three and an underlying offense level of 40 for Count Two. Because of the applicable enhancement Guidelines, Petitioner's total offense level remains 46 on both Counts. Thus, although Amendment 782 is retroactively applicable to Petitioner, it does not have the effect of lowering his Guidelines range and, therefore, 18 U.S.C. § 3582(c)(2) does not authorize a sentence reduction. *See* U.S.S.G. §1B1.10 cmt. n. 1(A) ("[A] reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if . . . an amendment listed in subsection (d) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision."). Since Petitioner's amended Guidelines range remains the same, it is unnecessary for the Court to engage in a § 3553(a) analysis. *See* 18 U.S.C. § 3582(c)(2) (a court must consider the § 3553(a) factors "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"). Accordingly, Petitioner's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) is **DENIED**.

## B. Relief Under § 404(b) of the FIRST STEP Act

### 1. Sentence Eligibility Determination

Petitioner may bring a motion to the court that sentenced him to reduce his sentence under the FIRST STEP Act if he seeks to reduce his sentence for a "covered offense," the sentence was not previously imposed or reduced in accordance with the FSA, and he has not filed a previous

11

motion under § 404 that was "denied after a complete review of the motion on the merits." *See* FIRST STEP Act at §§ 404(a)-(c), 132 Stat. at 5222.

As a preliminary matter, the Court finds that Petitioner's conviction under Count Two is not a "covered offense" because he was convicted under 21 U.S.C. §§ 848(a) and (c). Indictment at 12. The Fourth Circuit recently held in *United States v. Thomas*, 32 F.4th 420 (4th Cir. 2022) (per curiam), as a matter of first impression, that a continuing criminal enterprise conviction under 21 U.S.C. §§ 848(a) and (c) does not qualify as a "covered offense" under the FSA, even though the predicate offenses for the conviction, in violation of 21 U.S.C. §§ 841(a) and 846, do qualify. Petitioner argues that "the statutory penalties for [Count Two] are tied to and incorporate by reference the statutory provisions that were 'modified by section 2 or 3 of the Fair Sentencing Act.'" Pet'r's Mot. FIRST STEP Act at 5. However, the Fourth Circuit rejected this very reasoning in concluding that, "though [petitioner's] conviction for §§ 848(a) and (c) required a finding that he committed a continuing series of drug violations, the quantity and drug type of these violations made no difference for sentencing purposes, whereas they would matter to secure a conviction and sentence under § 848(b)." *Thomas*, 32 F.4th at 427-28; *see also Terry v. United States*, 141 S. Ct. 1858, 1863 (2021) ("[The Fair Sentencing Act] thus directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme.") (emphasis in original). Moreover, even though the Court "found the facts necessary to impose a mandatory life sentence under § 848(b)" in attributing Petitioner with 26.01 kilograms of cocaine base, over 300 times the quantity described in § 841(b)(1)(B), Petitioner "is still ineligible for relief because he was convicted and sentenced pursuant to §§ 848(a) and (c)." *Thomas*, 32 F.4th at 428-29. In other words, even if he could have been sentenced under § 848(b), his conviction is not a covered offense unless he was, in fact, sentenced under that provision. Accordingly, Petitioner's sentence for Count Two is

ineligible for review on the merits.

Petitioner does, on the other hand, meet all three eligibility criteria for Count Three. First, Petitioner seeks to reduce his sentence for a "covered offense," namely, Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019). Petitioner also committed the instant offense in the 1990s. PSR at ¶ 71. Second, this Court sentenced him on January 24, 1997. J. Third, Petitioner's sentence was not previously imposed nor reduced in accordance with the FSA, and, effectively, Petitioner did not previously file a motion under § 404(b) of the FIRST STEP Act to reduce his sentence. Since the Court considers Petitioner's Motion for Reconsideration, it effectively considers Petitioner's first Motion to Reduce Sentence Pursuant to the FIRST STEP Act for the first time. *See* Pet'r's Mot FIRST STEP Act.

The Court also finds that, even if this were technically Petitioner's second Motion under the Act, the Court was nonetheless unable to conduct a "complete review of the motion on the merits" because the Fourth Circuit had not yet defined the scope of the merits inquiry at the time the Court issued its original Memorandum Opinion and Order. FIRST STEP Act at § 404(c), 132 Stat. at 5222. Indeed, the Fourth Circuit vacated this Court's November 12, 2019, Order denying Petitioner's Motion for Reconsideration of his Motion under the FIRST STEP Act "for further proceedings in light of *Collington*." *Richardson*, 852 Fed. App'x at 108. Without the benefit of the Fourth Circuit's recent decisions clarifying and establishing the proper contours of a merits inquiry under the FIRST STEP Act at the time of the Court's original decision, it could not have conducted the requisite merits review. In other words, although the Court may have evaluated Petitioner's Motion "on the merits," it was unable to conduct a *"complete* review . . . on the merits" as it is now understood under Fourth Circuit precedent. FIRST STEP Act at § 404(c), 132 Stat. at 1522

13

(emphasis added). Accordingly, the Court finds that § 404(c)'s successive motion limitation is inapplicable to Petitioner's instant Motion.[6]

    2.  <u>Complete Review on the Merits</u>

If a sentence qualifies for review on the merits, a district court then has discretion to decide whether to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." FIRST STEP Act at § 404(b), 132 Stat. at 5222 (internal citation omitted).

    *a.  Retroactive Statutory Penalty Range*

First, the Court must determine the new statutory range for 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) pursuant to any amendments from sections 2 or 3 of the FSA by looking to the applicable penalty provisions for Petitioner's covered offense. *Collington*, 995 F.3d at 357.

Petitioner was convicted of Distribution and Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). Indictment at 13. At the time Petitioner was indicted, 21 U.S.C. § 841(b)(1)(A)(iii) addressed the penalties for a violation involving "50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base." 21 U.S.C.A. § 841 (1994) (West). If Petitioner had been indicted after the passage of the FSA, however, Petitioner would have been subject to the penalty provisions under 21 U.S.C. § 841(b)(1)(B)(iii). Specifically, after the FSA, § 841(b)(1)(B)(iii) addressed penalties for a violation involving "28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base," and § 841(b)(1)(A)(iii) addressed penalties for a violation involving "280

---

[6] The Court recognizes that this matter is before it on remand, specifically to reevaluate Petitioner's claim for relief under the FIRST STEP Act. Because the matter technically before the Court is a Motion for Reconsideration, it evaluates whether it may reconsider Petitioner's Motion under the FIRST STEP Act and finds that it may. Relatedly, in light of the procedural posture of this case and recent Fourth Circuit case law resolving unsettled questions of law under the Act, the Court need not reconsider some of the arguments that the parties originally offered in their pleadings. *See, e.g.*, Pet'r's Mem. Supp. (explaining the contours of and proper statutory vehicle for a FIRST STEP Act motion).

grams or more of a mixture or substance described in clause (ii) which contains cocaine base." *See* 21 U.S.C.A. § 841 (2010) (West). Thus, if the FSA had been "in effect at the time the covered offense was committed," because Petitioner was charged with distribution and possession with intent to distribute more than 28 but less than 280 grams of crack cocaine, Petitioner would have been subject to the penalties under § 841(b)(1)(B), not § 841(b)(1)(A). FIRST STEP Act at § 404(b), 132 Stat. at 5222.

At the time of sentencing, under 21 U.S.C. § 841(b)(1)(A), Petitioner faced a statutory mandatory minimum of 10 years' incarceration and a maximum of life imprisonment. 21 U.S.C.A. § 841 (1996) (West). After the FSA, under 21 U.S.C. § 841(b)(1)(B), Petitioner would have faced a mandatory minimum of 5 years' and a maximum of 40 years' incarceration. 21 U.S.C.A. § 841 (2010) (West). Thus, if the FSA been in effect at the time of Petitioner's covered offense, he would have faced a statutory penalty range between 5- and 40-years' imprisonment, rather than between 10 years' and life imprisonment. *See Richardson*, 852 Fed. App'x at 107 ("If sentenced today, Richardson would be subject to the sentencing range set forth in 21 U.S.C. § 841(b)(1)(B)(iii), which establishes a penalty of 5 to 40 years' imprisonment for crack offenses involving at least 28 grams but not less than 280 grams of crack.").

### b. *Recalculated Guidelines Range, Corrections, and Intervening Law*

After retroactively calculating the new statutory penalty range, a district court must recalculate the Sentencing Guidelines range by correcting original Guidelines errors and applying intervening case law made retroactive to the original sentence. *Chambers*, 956 F.3d at 670; *Collington*, 995 F.3d at 355. Petitioner does not raise any Guidelines errors nor point to any intervening case law made retroactive to his sentence. Rather, he asserts that the Fair Sentencing Act lowers his Guidelines range. Pet'r's Mem. Supp. at 9. Although the FSA, applied retroactively

through the FIRST STEP Act, does restrict Petitioner's Guidelines range to the statutory maximum of 40 years, it does not alter his range any further.

Petitioner argues that his Guidelines range should be based on the drug weight alleged in his Indictment. *Id.* at 9-10. Specifically, he contends that because the Government "was not required to prove to the jury that [he] distributed and/or possessed with intent to distribute specific quantities of drugs . . . at most, the jury found that [he] distributed and/or possessed with intent to distribute 50 grams of cocaine base." *Id.* The law is well settled, however, that at sentencing, the Government need only prove the amount of controlled substances attributable to a defendant by a preponderance of the evidence, not beyond a reasonable doubt. *United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002). The Court is entitled to calculate a defendant's Guidelines range based on attributable drug weight if the Court finds evidence of such weight by a preponderance of the evidence. *See United States v. Rangel*, 781 F.3d 736, 743 (4th Cir. 2015). Therefore, the drug quantity that the jury may have found beyond a reasonable doubt is not dispositive for sentencing purposes. Indeed, as previously discussed, the Court and the parties participated in an extensive sentencing hearing, guided by this preponderance standard, during which it found and attributed Petitioner with over 26 kilograms of cocaine base. *See* Sent'g Hr. Tr.[7] The Court therefore finds that the FSA alters Petitioner's statutory penalties, but has no impact on his Guidelines range as it pertains to his attributable drug weight. Moreover, contrary to Petitioner's alternative contention that he should only be held accountable for 1.5 kilograms of cocaine base because "that was all that was required for base offense level 38 at the time of [his] original sentencing," the FSA still does not impact his Guidelines range under U.S.S.G. §2D1.1.[8]

Since there are no Guidelines errors and no intervening case law that alters Petitioner's

---

[7] *See also supra* note 4 (summarizing the Court's drug weight findings).
[8] *See supra* Section III.A (concluding Petitioner would still have a base offense level of 38 if sentenced in 2014).

Guidelines range, his offense level remains 48 and his criminal history category remains V, which results in an advisory Guidelines range of life, restricted to 480 months', or 40 years', imprisonment. PSR at ¶¶ 148-49; *Booker*, 543 U.S. at 226.

### c. *18 U.S.C. § 3553(a) Factors*

Third and finally, the Court must reconsider the 18 U.S.C. § 3553(a) factors. *Chambers*, 956 F.3d at 670; *Collington*, 995 F.3d at 355; *Lancaster*, 997 F.3d at 175. In so doing, the Court may depart downward from the new Guidelines range and consider post-sentencing conduct. *Collington*, 995 F.3d at 355; *Chambers*, 956 at 674-75; *Pepper*, 562 U.S. at 491.

The nature and circumstances of the offense are unquestionably serious. *See* 18 U.S.C. § 3553(a)(1). Petitioner was convicted of participating in part of a four-year conspiracy to distribute and possess with intent to distribute controlled substances.[9] PSR at ¶ 11. According to the PSR, Petitioner was involved from the inception of the conspiracy until he was arrested in January 1996. *Id.* at ¶ 71. He was considered to be the overall organizer and leader of the conspiracy because he planned and carried out the activities necessary to purchase and distribute crack cocaine in the Eastern District of Virginia. *Id.* at ¶¶ 19, 71. Specifically, Petitioner developed sources for the organization's purchase of crack cocaine from sources of supply from New York, and later developed a source of supply with a direct contact in South America. *Id.* at ¶ 19. Petitioner also collected monies from co-conspirators, recruited participants, paid participants with a role in his organization, gave co-conspirators instructions, and received a large share of the proceeds. *Id.* at ¶ 71. He traveled between the Eastern District of Virginia and New York on several occasions to promote the conspiracy and utilized numerous individuals as nominees to purchase vehicles in furtherance of it. *Id.*

---

[9] Although the Court vacated Petitioner's conviction under the conspiracy Count, the offense conduct remains relevant because the Court found Count One to be a lesser included offense of Count Two.

On numerous occasions, Petitioner possessed firearms and used them as a method of intimidation, retaliation, and to ensure the success of the conspiracy. *Id.* Moreover, Petitioner and his co-conspirators used various methods to conceal the conspiracy and ensure its continued success, including shootings, assaults and other acts of intimidation, possession and use of weapons, including handguns, and purchases of vehicles in the names of nominees. *Id.* at ¶ 16. The conspirators used these methods to threaten, intimidate, and coerce individuals who owed drug debts, were witnesses against members of the conspiracy, or were otherwise perceived as jeopardizing the success of the drug distribution network. *Id.* at ¶ 17. They also used the drug sale proceeds to purchase vehicles and pay bail bondsmen, attorney's fees, insurance, and various other living expenses. *Id.* at ¶ 18. As discussed, Petitioner was ultimately attributed with over 26 kilograms of crack cocaine and laundering at least $51,044.70. *Id.* at ¶ 71, 43, 45.

As to his history and characteristics, Petitioner was a lifelong resident of Portsmouth, Virginia, at the time of sentencing. PSR at ¶ 119. He lived with his parents for almost his entire life before incarceration, and stated that "his parents did a good job in raising him." *Id.* Petitioner never married, but has two daughters, ages six and two at the time, by two different women, both of whom had passed away at the time he was sentenced. *Id.* at ¶¶ 123-24. The mother of Petitioner's second daughter, Telisha Johnson, died at 19 years old as a result of Petitioner accidentally shooting her. *Id.* at ¶ 124. Petitioner was convicted of involuntary manslaughter for Ms. Johnson's death. *Id.* at ¶¶ 95, 124. At the time of sentencing, Petitioner admitted to a history of alcohol abuse beginning at age 19, had not completed high school, and had held various jobs since he was about 14 years old. *Id.* at ¶¶ 128-36. Petitioner's criminal history beyond the instant offense is extensive, with 30 adult convictions, including three convictions for assault and battery, one conviction for involuntary manslaughter, and one conviction for obstruction of justice. *Id.* at ¶¶ 82-97.

Petitioner is currently 50 years old and was 24 years old when he was sentenced to life imprisonment. PSR at 2. To date, Petitioner has served nearly 26 years of his sentence, meaning he has spent over half of his life incarcerated *See* PSR at 1 ("Detained without bail since August 19, 1996"). Based on this information, the Court notes that Petitioner was around 20 years old when he became involved in the conspiracy. *See* PSR at ¶ 71 (Petitioner became involved in the instant offense in June 1992).

After sentencing, Petitioner incurred two infractions for fighting and possessing intoxicants. Pet'r's Mem. Supp. at 12. To his credit, however, Petitioner has not incurred any infractions in about 25 years. *Id.* Petitioner also obtained his G.E.D. in 1999, has taken advantage of numerous educational and vocational programs, written and obtained a copyrighted publication entitled "Activity Wars and Addictions," worked in the recreation department, and served as a member of the FCI McDowell Inmate Reentry Council. Pet'r's Mot. Reconsid. at 9-10, Ex. 1-13. The Court particularly commends Petitioner for authoring a self-help publication intended to deter others from destructive and addictive behaviors, which is designed for use in school settings, as well as all levels of correctional, rehabilitation, and pre-release audiences. *Id.* at 10, Ex. 13. The Court also commends Petitioner for voluntarily serving as a member of the Inmate Reentry Council, which works to institute opportunities for developing personal accountability and understanding of one's criminalistics impact on society, reduce recidivism and victimization, assist incarcerated individuals to become productive members of society, and make the institution safer by decreasing inmate idleness. *Id.* at Ex. 12. Moreover, the Court recognizes the informal role that Petitioner has taken upon himself to settle disputes between other inmates, and to interrupt and stop violence in his facility, including assaults against facility staff. *Id.* at Ex. 14; M. Mercado Mem. Oct. 22, 2019, ECF No. 439. Petitioner has also maintained a strong support system and

familial relationships. Pet'r's Mot. Reconsid. at Exs. 15-17 (letters from Petitioner's daughter and cousin); Letter from Counsel Aug. 27, 2019, ECF No. 438 (letters from Petitioner's son and friend). The Court therefore finds that Petitioner's rehabilitation, age, and support system indicate that he is unlikely to recidivate if released. *See* 18 U.S.C. § 3553(a)(2)(B)-(C).

The Court must also consider the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Several of Petitioner's co-defendants have received reduced sentences pursuant to 18 U.S.C. § 3582. *See* Order Grant'g Mot. Reduce Sentence 18 U.S.C. § 3582(c)(2), ECF No. 412 (co-defendant Joseph Dodd's sentence reduced from 324 months to time served); Order Grant'g Mot. Reduce Sentence 18 U.S.C. § 3582, ECF No. 377 (co-defendant Golden's sentence reduced form 295 months to 211 months); Order Grant'g Mot. Reduce Sentence 18 U.S.C. § 3582, ECF No. 339 (co-defendant Lawton's sentence reduced from 200 months to 161 months). However, Petitioner's co-defendants were attributed with significantly less drug weights than he was. *See* PSR at ¶¶ 72 (Joseph Dodd attributed with 12.82 kilograms of cocaine base), 73 (Golden attributed with 2.01 kilograms of cocaine base), 74 (Lawton attributed with 518.7 grams of cocaine base). Unlike Petitioner, therefore, Amendment 782 actually amended his co-defendants' Guidelines ranges. U.S.S.G. §1B1.10(b)(1). The Court also notes that Petitioner is the only defendant of the seven individuals convicted on this Indictment that remains incarcerated.[10]

### d. Disposition

For the foregoing reasons, the Court finds it appropriate to reduce Petitioner's sentence. *See Collington*, 995 F.3d at 355 ("[T]he First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms."). Specifically, the Court considers Petitioner's amended statutory

---

[10] *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed June 6, 2022).

sentencing range, youth at the time of the covered offense, age, support system, and the need to avoid sentencing disparities as warranting a reduction in sentence. Accordingly, Petitioner's Motion to Reduce Sentence under the FIRST STEP Act is **DENIED IN PART AND GRANTED IN PART.** Specifically, Petitioner's Motion is **DENIED** as to Count Two and **GRANTED** as to Count Three.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Reconsideration of the Court's Order of July 11, 2019, is **DENIED IN PART AND GRANTED IN PART.** Specifically, Petitioner's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) is **DENIED,** and Petitioner's Motion to Reduce Sentence under the FIRST STEP Act is **DENIED IN PART AND GRANTED IN PART.** The Court now imposes a sentence of **THREE HUNDRED SIXTY (360) MONTHS** on Count Three. All other provisions of Petitioner's sentence **SHALL** remain unchanged.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the Federal Public Defender, and the United States Probation Office.

**IT IS SO ORDERED.**

Norfolk, Virginia
June 13 , 2022

Raymond A. Jackson
United States District Judge